UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

A.C. JACKSON,                          )
                                       )
            Petitioner,                )
                                       )
      vs.                              )      Case No. 1:15CV00115 SNLJ
                                       )
UNITED STATES OF AMERICA,              )
                                       )
            Respondent.                )

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by A. C. Jackson, a person in federal custody. On January 14, 2014, Jackson was found guilty by a jury of the offense of being a felon in possession of a firearm and, on April 10, 2014, this Court sentenced Jackson to the Bureau of Prisons for a term of 210 months, a sentence within the sentencing guideline range.  Jackson's § 2255 action, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

## FACTS

### A.  The Indictment.

On July 18, 2013, a Grand Jury in the Eastern District of Missouri, Southeastern Division, returned a two-count Indictment against A. C. Jackson. Count I of the Indictment charged that, at a time unknown to the Grand Jury but including a period from in and around March 28, 2012, to March 28, 2013, Jackson, committed the crime of being a Felon in Possession of a Firearm in violation of Title 18, United States Code, Section

922(g)(1). Count II of the Indictment charged that, on or about March 29, 2013, Jackson committed the crime of being a Felon in Possession of a Firearm in violation of Title 18, United States Code, Section 922(g)(1). A Writ of Habeas Corpus Prosequendum was obtained, requiring Jackson's transfer from state custody to federal custody. On August 6, 2013, Jackson made his initial appearance on the federal charges. After the initial appearance, the Federal Defenders Office was appointed to represent Jackson. Assistant Federal Defender Scott Tilsen filed an entry of appearance on August 8, 2013, notifying the District Court that he would be representing Jackson. Jackson was arraigned on August 8, 2013. At that arraignment, Jackson pled not guilty to the charges.

**B. Pretrial Motions.**

On August 22, 2013, Jackson's attorney filed two pretrial motions. The first motion was a Motion to Suppress Evidence. The second motion was a Motion to Sever Counts. On August 28, 2013, Jackson's attorney filed a Motion to Suppress Statements. A hearing was held on those pretrial motions on August 30, 2013, before United States Magistrate Judge Lewis M. Blanton. On November 15, 2013, Judge Blanton issued his Report and Recommendations, recommending that Jackson's pretrial motions be denied. On December 9, 2013, Jackson's attorney filed an Objection to the Report and Recommendations. On December 17, 2013, this Court entered its Order adopting the Report and Recommendations and denying Jackson's Motion to Suppress Evidence, Motion to Suppress Statements and Motion to Sever Counts.

**C. Trial.**

On January 14, 2014, a jury trial was held for the charges against Jackson. That trial was completed on the same day, with the jury returning a guilty verdict on both counts in the Indictment. A summary of the evidence against Jackson is set forth in the next section.

### D. Trial and Motion to Suppress Evidence

On March 28, 2013, Wayne County, Missouri, Deputy Travis Hanger received a call from his dispatcher, informing him that a man wanted to report his firearm being stolen. The dispatcher told Hanger to contact the man at the residence of Bob Elledge in Wappappello, Missouri. (Trial Tr.; DCD 86, p. 24-25) Deputy Hanger drove to that residence and made contact with the man, who turned out to be the defendant, A.C. Jackson. Missouri State Highway Patrol Trooper Kelly Barnett arrived shortly after to assist Deputy Hanger in that contact. (Trial Tr., p. 26)

Deputy Hanger had not met A.C. Jackson before that contact. Jackson and Deputy Hanger went inside the Elledge residence to talk about Jackson's complaint. (Trial Tr., p. 27) Jackson told Hanger that he had purchased a .22 caliber rifle from Bob Elledge for $200. Jackson stated that his nephew, Bobby Joe Jackson, had stolen the rifle. (Trial Tr., p. 27-28) A.C. Jackson wrote a statement for the officer, describing the event:

> I paid Bob Elledge $200 for a 22 caliber speedmaster 550. Bobby
> Joe Jackson stole the gun from Bob Elledge's house on 3-24-13
> or 3-25-13. Bob Elledge and Mick Spain saw him take it.

Trial Exhibit 3.

After receiving the statement from A.C. Jackson, Deputy Hanger stepped outside to speak with Trooper Barnett. Barnett informed Hanger that Jackson was a previously

convicted felon. (Trial Tr., p. 31-32) Barnett also reported that Jackson had numerous "armed criminal actions" on his criminal history record. (Motion to Suppress Tr.; DCD 38, p. 14) Deputy Hanger decided to try to contact Bobby Joe Jackson to question him about the event. A.C. Jackson had given the officer directions to Bobby Joe's home. (Motion to Suppress Tr., p. 14)

Hanger and Barnett drove toward Bobby Joe Jackson's home, but found him driving a four-wheeler a short distance from Bob Elledge's residence. (Trial Tr., p. 32) Deputy Hanger informed Bobby Joe that A.C. Jackson had accused him of stealing a rifle from Bob Elledge's residence. (Trial Tr., p. 33) Bobby Joe told the officer that he was involved in a dispute with A.C. Jackson over a truck and that he had heard rumors that A.C. Jackson was going to "gut" shoot him. Bobby Joe stated that he was in fear for his life. (Motion to Suppress Tr., p. 15) After learning of this rumor, Bobby Joe went to Bob Elledge's home and told Elledge of the incident. Bobby Joe then told Elledge he would feel more comfortable if Bobby Joe could take the firearm and keep it away from A.C. Jackson. (Motion to Suppress Tr., p. 16) After hearing from Bobby Joe, Elledge agreed to give him the firearm. (Motion to Suppress Tr., p. 17) Bobby Joe told the officers that he would be willing to give the rifle to law enforcement. (Trial Tr., p. 33)

Deputy Hanger spoke further with Bobby Joe about A.C. Jackson's involvement with firearms. Bobby Joe told the deputy that A.C. Jackson had another firearm in his home that was an interchangeable, multi-barreled firearm. That firearm stock would accept three barrels for .22 caliber, .243 caliber and 20 gauge shotgun ammunition. (Motion to Suppress Tr., p. 18) After hearing that information, Deputy Hanger decided to

apply for a state search warrant to search A.C. Jackson's residence for the multi-barreled firearm. (Trial Tr., p. 40)

Bobby Joe accompanied the officers to Bobby Joe's home, which was located about three miles from the Elledge home. Bobby Joe told the officers where the firearm was located inside the house. Deputy Hanger went inside and retrieved a .22 caliber Remington, Speedmaster rifle. (Trial Tr., p. 33-35, 65; Exh. 1)

The officers decided to go back to the Elledge residence and make contact with A.C. Jackson. (Trial Tr., p. 37) Deputy Hanger asked Jackson why he bought the rifle. Jackson replied that he bought the rifle to make a profit from it. (Trial Tr., p. 37) Deputy Hanger asked Jackson whether he knew that he was unable to possess a firearm and Jackson responded that he believed that he could buy a firearm and keep it as long as it was not in his possession. (Motion to Suppress Tr., p. 21) When asked, Jackson denied having any other firearms in his home. (Motion to Suppress Tr., p. 22) Deputy Hanger asked Jackson for permission to search his home. Jackson declined, telling the officer that he would have to get a search warrant if he wanted to search Jackson's home. (Motion to Suppress Tr., p. 22)

Deputy Hanger then went outside to speak with Bob Elledge. Like Bobby Joe, Elledge told the officer that Bobby Joe had come to Elledge's home and reported that A.C. Jackson was threatening him. Elledge stated that he gave the firearm to Bobby Joe and that it was not really stolen. Elledge did not originally tell the officer this information because he did not want to say anything in front of A.C. Jackson because he was afraid of Jackson. (Motion to Suppress Tr., p. 23)

After that contact, A.C. Jackson was arrested. (Trial Tr., p. 37-38) After advising Jackson of his *Miranda* rights, Deputy Hanger asked him for directions to his house. The instructions Jackson provided guided the officer to the home of Bobby Joe Jackson instead. Deputy Hanger did not tell Jackson that he knew Jackson had given him false directions, and transported Jackson to the Wayne County jail. Trooper Barnett drove to A.C. Jackson's home and took a picture of that home for use in the search warrant application. (Motion to Suppress Tr., p. 23-26) Bobby Joe Jackson's residence is approximately 1,000 yards in a straight line from A.C. Jackson's home. (Trial Tr., p. 145)

Deputy Hanger prepared a search warrant affidavit and application, asking for permission to search A.C. Jackson's Wayne County residence for firearms and ammunition. The search warrant affidavit contained the officer's sworn statement of probable cause for the search:

1. I am a member of Wayne County Sheriff's Department. I am a certified Peace Officer in the State of Missouri and have been since 2011. I have training in investigations and have been involved in investigations that have led to favorable conclusions.

2. On Thursday, March 28th, 2013 This Officer received information of possible stolen firearm from AC Jackson. Upon investigating said report this Officer found the report to be false. This Officer received information that AC Jackson was to be a convicted felon and to be in possession of other firearms at his residence on Hurley DR. Wappapello, Missouri. This Officer

request Jackson to check his residence for firearms wherein he

refused. This Officer has reason to believe there are more firearms

at Jacksons residence. This Officer has a statement confirming

presence of firearms and ammunition at this trailer.

Motion to Suppress Hearing, Exhibit 3, p. 6.

After preparing the affidavit, Deputy Hanger faxed it to the Wayne County

prosecuting attorney Robert Ramshur for his review. After reviewing that document,

Ramshur's assistant contacted the deputy and told him that the search warrant packet had

been approved by Mr. Ramshur. (Motion to Suppress Tr., p. 30-32) On March 29, 2013,

Deputy Hanger took the search warrant application and affidavit to the Wayne County

Associate Circuit Judge, Randy Shuller. Judge Shuller reviewed the packet and signed the

search warrant, authorizing the search of A.C. Jackson's residence. (Motion to Suppress

Tr., p. 32-34) Before signing the search warrant, Judge Shuller asked Deputy Hanger

some questions and Hanger gave the judge "the basic logistics of the case." (Motion to

Suppress Tr., p. 33)

After the search warrant had been signed, Deputy Hanger and Trooper Barnett

went to A.C. Jackson's to execute it. During the execution of the warrant, they found and

seized a Rossi, multi-barreled firearm and some ammunition. (Trial Tr., p. 43, 58)

Officers also found a .22 caliber barrel and a .243 caliber barrel for the firearm in a black

bag behind the couch in the living room. A firearm fitted with the 20 gauge barrel was

found in an open space usually used for the air conditioner unit in the home. The space

was covered by a grate that was leaned up against the wall. When the officer removed the

loose grate, he found the loaded shotgun in the space. (Trial Tr., p. 43-49, 58) In addition, .243 caliber ammunition was found in the home near a firearm cleaning kit, along with .22 caliber and 20 gauge shotgun ammunition. A.C. Jackson's photo identification was found in the same area as the ammunition and cleaning kit. (Tr. Tr., p. 52-53)

ATF Special Agent David Diveley arrested A.C. Jackson on the federal indictment and transported him to the Cape Girardeau courthouse. Diveley gave Jackson a *Miranda* warning at the beginning of that transfer. During that trip, A.C. Jackson stated that he had purchased the Remington, .22 caliber rifle (Trial Exhibit 1) from Bob Elledge and had left the firearm at the Elledge residence. Jackson stated that he had shot the rifle one time. (Trial Tr., p. 93-96)

A.C. Jackson testified in his own defense at the trial. Jackson admitted that he had purchased the Remington, .22 caliber rifle from Bob Elledge for $200 and that he left it at the Elledge home. Jackson denied ever shooting the rifle or holding it. (Trial Tr., p. 118) Jackson denied that the Rossi, multi-barreled firearm was his, stating that the firearm had been purchased by Bobby Joe Jackson and was last in Bobby Joe's possession. (Trial Tr., p. 122, 123)

Jackson admitted that he was a previously convicted felon. (Trial Tr., p. 134, 137) He also conceded that he gave Bob Elledge instructions to keep the firearm at the Elledge home. (Trial Tr., p. 138) Jackson denied that ATF SA Diveley asked him whether he shot either of the firearms mentioned in the Indictment. (Trial Tr., p. 146)

Bobby Joe Jackson testified as a Government rebuttal witness. Bobby Joe stated he was present when A.C. Jackson agreed to buy the Remington, .22 caliber firearm from

Bob Elledge. Bobby Joe testified that A.C. Jackson handled the Remington rifle and inspected it prior to the purchase. (Trial Tr., p. 151, 152) Bobby Joe was also present when A.C. Jackson purchased the Rossi, multi-barreled firearm. A.C. Jackson traded a 12 gauge shotgun to another man for the Rossi firearm. (Trial Tr., p. 152-155) Bobby Joe had seen A.C. Jackson hunt with the Rossi firearm and use the different barrels for it. (Trial Tr., p. 156) Bobby Joe denied that he had planted the Rossi firearm at A.C. Jackson's residence prior to the search. (Trial Tr., p. 179)

### E. The Presentence Investigation Report.

A Presentence Investigation Report ("PSR") was prepared by United States Probation Officer Kenneth W. Lawrence. That report recommended that Jackson's base offense level be set at 33, pursuant to U.S.S.G., § 4B1.4(b)(3)(B), due to his prior violent felony convictions of First Degree Attempted Robbery by Means of a Dangerous and Deadly Weapon (PSR ¶ 29), two counts of Aggravated Robbery (PSR ¶ 32), Aggravated Escape From Custody (FN1) (PSR ¶ 33), Armed Violence and Unlawful Use of a Weapon (PSR ¶ 35), Second Degree Burglary (PSR ¶ 36), and Attempted Aggravated Robbery (PSR ¶ 38). Based on those convictions, Jackson was classified as an Armed Career Criminal[1] subject to a mandatory minimum sentence of fifteen years and a

---

[1] A defendant is classified as an Armed Career Criminal if he or she is convicted of being a felon in possession of a firearm and have three prior felony convictions for "serious drug offenses" and/or "violent felonies" as those terms are defined by 18 U.S.C. § 924(e)(2)(A) and (B). Jackson's PSR classified his felony conviction for Aggravated Escape as a violent felony. That classification may be incorrect in light of the Supreme Court's opinion in *Johnson v. United States*, 135 S.Ct. 2551 (2015). However, Jackson has more than three violent felony convictions even if the Aggravated Escape conviction is excluded from consideration as a violent felony. Therefore, there was no error in sentencing Jackson as an Armed Career Criminal because he has a total of four violent felony convictions, excluding the Aggravated Escape conviction.

maximum sentence of life. His offense levels were enhanced to 33 due to that classification. (PSR ¶ 23, 24)

The PSR also calculated Jackson's Criminal History Category and listed his many convictions. Jackson's first conviction occurred when he was nineteen years old. On January 30, 1968, Jackson was convicted of the misdemeanor of Assault With Intent to Ravish Without Malice. He was sentenced to serve a term of imprisonment of one year. He did not receive any criminal history points for that conviction. (PSR ¶ 28)

On April 21, 1969, Jackson was convicted of the felony of First Degree Attempted Robbery by Means of a Dangerous and Deadly Weapon. Jackson was twenty years old at the time of this conviction and received a sentence of two years imprisonment. No criminal history points were assessed for this conviction. (PSR ¶ 29)

On April 21, 1969, Jackson was convicted of the felony of Carrying a Concealed Weapon. He was sentenced to serve a term of imprisonment of two years. Jackson did not receive any criminal history points for this conviction.

On October 21, 1970, Jackson was convicted of the felony of Forgery. He was sentenced to a term of imprisonment of two to ten years. He did not receive any criminal history points for this conviction. (PSR ¶ 31)

On October 31, 1972, Jackson was convicted of two counts of Aggravated Robbery. He was 24 years old at the time. He was sentenced to fifteen years to life imprisonment. He received four criminal history points for those convictions. (PSR ¶32)

On November 30, 1973, Jackson was convicted of the felony of Aggravated Escape From Custody. Jackson was 25 years old at the time of this conviction. Jackson

was sentenced to a term of imprisonment of one to five years. No criminal history points were assessed. (PSR ¶ 33)

On April 18, 1980, Jackson was convicted of the misdemeanor of Theft. He was sentenced to serve a year in jail for that conviction. Jackson was 31 years old at the time of this offense. No criminal history points were assessed. (PSR ¶ 34)

On June 21, 1982, Jackson was convicted of the felonies of Armed Violence and Unlawful Use of a Weapon. He was 33 years old at the time of that conviction. Jackson was sentenced to serve a term of imprisonment of twenty years on the first count and five years on the second. No criminal history points were assessed for that conviction. (PSR ¶ 35)

On July 19, 1994, Jackson was convicted of the felony of Second Degree Burglary. He was sentenced to serve a term of imprisonment of three years for this conviction. Jackson was 45 years old at the time of his arrest for this offense. No criminal history points were assessed. (PSR ¶ 36)

On November 14, 2001, Jackson was convicted of the misdemeanor of Driving While Intoxicated. He was sentenced to jail for 30 days. No criminal history points were assessed for this conviction. (PSR ¶ 37)

On March 25, 2007, Jackson was convicted of the felony of First Degree Attempted Aggravated Robbery. He was sentenced to serve a term of imprisonment of 44 months. Jackson was 59 years old at the time of this arrest. He received three criminal history points for this conviction. (PSR ¶ 38)

On December 8, 2011, Jackson was convicted of the misdemeanor of Driving While Intoxicated. He was sentenced to serve 180 days in jail, but 150 days of that sentence were suspended. He received one criminal history point for that conviction. (PSR ¶ 39)

On May 5, 2011, Jackson was convicted of the Misdemeanor of Driving After Cancellation. He was fined $200 for that conviction. No criminal history points were assessed. (PSR ¶ 40)

On February 14, 2013, Jackson was convicted of the misdemeanor of Driving While Intoxicated. He was sentenced to serve 20 days in jail. He received one criminal history point for that conviction. (PSR ¶ 41)

Jackson received two additional criminal history points because he was still under a criminal justice sentence when he committed the instant offense. His total criminal history score was 11, giving him a Criminal History Category of V. (PSR ¶ 43 – 46) Jackson's Guideline range of imprisonment was calculated to be 210 to 262 months. (PSR ¶ 75)

There were no objections to the Presentence Investigation Report.

**F. The Sentencing Hearing.**

On April 10, 2014, this Court conducted a sentencing hearing. Because there were no objections to the Presentence Investigation Report, this Court adopted the findings and conclusions of that Report, with the exception of a description of an old offense. (Sent. Tr., pp. 2-4) The parties presented their sentencing arguments and Jackson spoke on his own behalf. (Sent. Tr. pp. 5-9)

This Court announced that Jackson's sentence would be a term of imprisonment of 210 months on each count, to be served concurrently, followed by three years of supervised release. Jackson was also ordered to pay a $200 special assessment. (Sent. Tr. pp. 10-12)

**G. The Appeal.**

Jackson appealed his conviction and sentence. In that appeal, he questioned whether this Court erred by denying his Motion to Suppress Evidence, when this Court found that the good faith doctrine permitted the admission of the multi-barreled firearm into evidence. That firearm was found during a search of Jackson's home pursuant to a state search warrant. The Eighth Circuit Court of Appeals affirmed Jackson's conviction by its opinion dated May 5, 2015. *See United States v. Jackson*, 784 F.3d 1227 (8th Cir. 2015).

**H. Petition for Post-Conviction Relief Pursuant to § 2255.**

On June 22, 2015, Jackson filed his Petition under 28 U.S.C. § 2255, asking that this Court set aside Jackson's conviction and sentence. Jackson alleges several errors in his conviction, which are set out below:

1. The grand jury indictment was unconstitutionally vague and did not charge an offense.

2. The grand jury indictment was constructively amended.

3. Jackson was denied his constitutional right to testify at a competency hearing.

4. Jackson was not convicted of the offense he was charged with.

5. 18 U.S.C. § 922(g)(1) is unconstitutional as applied to Jackson.

6. The residual clause of 18 U.S.C. § 924(e) is unconstitutionally vague.

7. The Government improperly commented on Jackson's prior conviction for

Aggravated Robbery.

8. Jackson's sentence is unconstitutionally excessive.

9. This Court improperly permitted a jury to sleep during the trial.

10. This Court improperly allowed the grand jury access to a copy of the

indictment.

None of Jackson's complaints have any merit.

## APPLICABLE LAW

## A. NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF

28 U.S.C. § 2255 provides, in pertinent part:

Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States

District Court states:

The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of

establishing the need for an evidentiary hearing. In determining whether petitioner is

entitled to an evidentiary hearing the court must take many of petitioner's factual

averments as true, but the court need not give weight to conclusory allegations, self-

interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. *Id.*, at 225-6. See also *United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995) *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, the movant must first show that the counsel's performance was deficient. 466 U.S. at 687. This requires the movant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Secondly, the movant must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The Eighth Circuit has described the two-fold test as follows: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). More recently the Eighth Circuit has described the *Strickland* test as follows: "Whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027, quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064-65. Counsel's challenged conduct is viewed as of the time of his representation. "And we avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. A reviewing court's "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

The standard to be used in a collateral charge of ineffective assistance of counsel following a guilty plea is governed by *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366

(1985), which applies the holding of *Strickland* to instances involving guilty pleas. A movant who pleads guilty upon advice from counsel may only contest the voluntary and intelligent character of the plea by establishing that the advice given was not within the range of professional competence required of the attorney in a criminal case. *Lockhart*, 474 U.S. at 56, citing *Tollett v. Henderson*, 411 U. S. at 267.

## DISCUSSION

This Court will address each complaint made by Jackson that he presented in his Petition.

## Issue # 1. The grand jury indictment was unconstitutionally vague and did not charge an offense.

In this point, Jackson contends that his charging Indictment was "unconstitutionally vague" and that it did not charge an offense. Jackson cites the four types of possession that can be found by a jury (actual, constructive, sole and joint) and argues that the jury was allowed to choose between the four types of possession without requiring them to be unanimous on the type of possession for his convictions. Jackson argues that his Indictment was defective for failing to specify the exact type of possession that the Government was alleging was present in his case. Jackson seems to raise the issue of whether he was convicted of the same offense in multiple counts by stating that his "conviction is [a] vice of duplicity."

An indictment adequately states an offense if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a

conviction or acquittal as a bar to a subsequent prosecution. *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008). An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted. *Id*.

Jackson was convicted of two charges of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). That statute states, in relevant part:

(g) It shall be unlawful for any person –

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

to . . . possess in or affecting commerce, any firearm . . .

18 U.S.C. § 922(g)(1).

Count I of Jackson's Indictment states:

At a time unknown to the Grand Jury, but including a period from in and around March 28, 2012, to March 28, 2013, in Wayne County,Missouri, within the Eastern District of Missouri, the defendant, **A. C. JACKSON**, did knowingly possess in and affecting commerce, a firearm, to wit: a Remington, Model 552, Speedmaster, .22 caliber rifle, bearing serial number A1961432; and had previously thereto been convicted of [a] crime punishable by a term of imprisonment exceeding one year.

Count II of that Indictment states:

On or about March 29, 2013, in Wayne County, Missouri, within the Eastern District of Missouri, the defendant, **A. C. JACKSON**, did knowingly possess in

and affecting commerce, a firearm, to wit: a Rossi, model Trifecta, multi-caliber, break-action rifle, bearing serial number SP543141; and had previously thereto been convicted of [a] crime punishable by a term of imprisonment exceeding one year.

Jackson is correct in that the two counts of the Indictment do not specify what type of possession that Jackson used when he possessed the two firearms. But the statute does not specify the type of possession either.

The exact type of possession of a firearm is not an element of the offense. The Eighth Circuit's Model Criminal Instruction for a charge of Felon in Possession of a Firearm is set out as follows:

It is a crime for a felon to possess a firearm, as charged in [Count ___ of] the Indictment. This crime has three elements, which are:

*One*, the defendant had been convicted of a crime punishable by imprisonment for more than one year;

*Two*, after that, the defendant knowingly [possessed] [received] a firearm, that is (describe weapon); and

*Three*, the firearm was transported across a state line at some time during or before the defendant's possession of it.

Model Criminal Instruction; 8th Cir., 6.18.922A.

It is clear that the Indictment follows the requirements of the statute, that it contains all the elements of the offense charged, that it accurately informs the defendant of what charges he must defend himself against and that the charges are specific enough

to allow the defendant to raise the defense of double jeopardy if he were charged with the same offense in a later indictment. Jackson's Indictment is sufficient, in spite of the fact that it does not specify the type of possession committed by him. An indictment that closely tracks the language under which it is brought is generally sufficient to give a defendant notice of the crimes with which he is charged. *United States v. Tebeau*, 713 F.3d 955, 962 (8th Cir. 2013). Jackson's Indictment tracks § 922(g)(1) very closely, lists all its elements, the dates and location of the offenses and is sufficient. An indictment must contain a plain, concise, and definite written statement of the essential facts constituting the offense. *Id.* Jackson's Indictment does all that, and more.

Neither the statute (922(g)(1) nor the instruction are dependent on the definition of the type of possession committed by the defendant. The only allegation required, and proof at trial required, is that the defendant committed one of the types of possession set out in Model Criminal Instruction 8.02:

> The law recognizes several kinds of possession. A person may have actual possession or constructive possession. A person may have sole or joint possession.
>
> A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.
>
> A person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.
>
> If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.
>
> Whenever the word "possession" has been used in these instructions it includes actual as well as constructive possession and also sole as well as joint possession.

(Model Criminal Instruction, 8th Cir., 8.02) (Given during Jackson's trial)

Jackson seems to contend that the type of possession, whether actual or constructive, sole or joint, is an element of the offense. He is simply mistaken as to that belief.

A case from another circuit discussed the very issue that Jackson raises in his motion. In *United States v. Barton*, 731 F.2d 669 (10th Cir. 1984) (reversed on other grounds), the defendant claimed that the district court erred in refusing to instruct the jury that they must reach a unanimous verdict of either actual or constructive possession of a firearm in a felon in possession case. Barton argued that "the verdict was not unanimous unless all twelve jurors agreed that he had actual possession of the gun, or that all twelve agreed that he had constructive possession of the gun." *Id*., at 672. The Tenth Circuit held that Barton's argument was without merit.

> Barton was indicted and tried for possession of a firearm by a felon. The relevant act prohibited by the statute is "possession," which encompasses both actual and constructive possession. The trial court correctly instructed the jury on these two types of possession. (Citations omitted) Actual and constructive possession are not alternative crimes under the statute. Rather, they provide different means or theories by which the offense of "possession" may be proved. (Citations omitted)

Barton, 731 F.2d at 672-73.

A district court in this circuit came to the same conclusion in *United States v. Boman*, 2014 WL 2159400 (N.D.Iowa 2014) when considering the same issue. Boman contended that his district court erred by not submitting a special interrogatory question that would have required the jury to decide which type of possession of the firearm was

committed by the defendant, either actual or constructive. Rejecting the defendant's argument, the district court noted:

> Defendant argues that the court erred when it did not give Defendant's proposed interrogatory, which would have required the jury to unanimously agree on which kind of possession – actual or constructive – Defendant exercised over the firearm and ammunition. In support of his argument, Defendant relies on *Richardson v. United States*, 526 U.S. 813 (1999). In *Richardson*, the Supreme Court held that "a jury in a federal criminal case brought under [21 U.S.C.] § 848 must unanimously agree not only that the defendant committed some 'continuing series of violations' but also that the defendant committed each of the individual 'violations' necessary to make up that 'continuing series.' *Richardson*, 526 U.S. at 815. The Court distinguished between "factual elements, which are ordinarily listed in the statute that defines the crime" and "underlying brute facts [that] make up a particular element." *Id.* at 817. A jury is required to "unanimously find [ ] that the [g]overnment has proved each element," while a jury need not unanimously agree about "which of several possible means the defendant used to commit an element of the crime." *Id.*
> . . .
> The way in which Defendant possessed the items – whether actual possession or constructive possession – was merely an "underlying brute fact making up the element of possession and, therefore, the jury was not required to unanimously agree about the way in which Defendant possessed the firearm and ammunition. (Citing *Barton*, *supra*)

*Boman*, * 5, 6.

Jackson has raised exactly the same claim here as was raised in *Barton* and *Boman*. The jury was only required to unanimously decide whether he committed each element of the crimes charged. They were not required to unanimously decide the type of possession used by Jackson to commit those crimes.

When a district court instructs the jury that they must unanimously must arrive at a unanimous verdict for each count, that instruction is usually sufficient to protect a defendant's Sixth Amendment right to a unanimous verdict. *United States v. James*, 172 F.3d 588, 593 (8th Cir. 1999) That instruction was given in Jackson's case. The relevant

portion of that Instruction stated, in the portion labeled "Second," "You should try to reach agreement if you can do so without violence to individual judgment, because a verdict – whether guilty or not guilty – must be unanimous." In the paragraph labeled "Fifth," the Instruction read, "The verdict whether guilty or not guilty must be unanimous." Jackson's jury instruction clearly instructed the jury to reach unanimous verdicts. (See Exh. 3)

The *James* case further undercuts Jackson's argument as to whether a jury is required to unanimously agree as to the specific acts required to complete the crime. James argued that his crime allowed different methods of commission, in that his indictment allowed a conviction if he "transferred, sold, gave, transported, or delivered a firearm." James argued that his jury should have been required to unanimously agree as to which of the different methods specified in the statute that he used to commit his crime. The Eighth Circuit disagreed, holding that:

> It has long been the general rule that when a single crime can be committed in various ways, jurors need not agree on the mode of commission. (Citation omitted) In returning a general verdict for a single crimes permissible for different jurors to be persuaded by different pieces of evidence, and yet agree that the defendant violated the statute.

*James*, 172 F.3d at 593.

The Supreme Court has noted that indictments need not specify which overt act, among several named, was the means by which a crime was committed. *Schad v. Arizona*, 501 U.S. 624, 631, 111 S.Ct. 2491 (1991). In so holding, that Court stated:

> We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In these cases, as in litigation

generally, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict. (Citation omitted)

*Schad*, 501 U.S. at 631-32.

In *Schad*, the defendant was charged with premeditated murder and felony murder. The jury convicted him of first degree murder. Schad appealed, contending that the trial court erred by not requiring the jury to unanimously agree to which of several different methods of committing first degree murder were committed by Schad. In essence, Schad wanted a jury to have to consider each different way that he might have committed the murder and have the jury members all agree on each different method. Jackson proposes the same result here in that he would have the jury consider separately and unanimously whether he actually possessed the firearm or constructively possessed the firearm.

The above cases clearly demonstrate that jurors may consider all the evidence of possession, whether actual or constructive, sole or joint, and then decide the basic question of whether Jackson was in possession of the firearm. This Court was not required to give any further instruction on unanimity other than the general unanimity instruction that was provided.

The position that Jackson asserts, that the jury should have been required to decide unanimously that he only committed one type of possession (whether actual, constructive, sole or joint) is simply not supported by any authority. In fact, the great weight of authority rejects Jackson's claims. His jury was allowed to weigh the evidence and each jury member could independently decide on the type of firearms possession that

Jackson committed. There was no error by this Court and the Indictment was not defective.

**Issue # 2. The grand jury indictment was constructively amended.**

In this argument, Jackson contends that his Indictment was constructively amended by the Jury Instruction dealing with the different types of possession. That instruction informed the jury that they could consider whether Jackson possessed the firearms either by actual possession or constructive possession, and whether his possession was sole or joint. Jackson argues that arguing the types of possession was an impermissible amendment of his Indictment, since the Indictment did not specify the type of possession he committed.

A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner – often through the evidence presented at trial or the jury instructions – that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the Indictment. *United States v. Thomas*, 791 F.3d 889, 896 (8th Cir. 2015). In Jackson's case, there was no amendment; his conviction was premised on the same elements as was charged, that he was a felon in possession of a firearm that affected interstate commerce.

A review of the Model Instruction from the Eighth Circuit for a felon in possession of a firearm charge demonstrates that the indictment was not required to list the exact type of possession. That model instruction states:

It is a crime for a felon to possess a firearm, as charged in [Count __ of] the Indictment. This crime has three elements, which are:

> *One*, the defendant had been convicted of a crime punishable by imprisonment for more than one year;
>
> *Two*, after that, the defendant knowingly [possessed] [received] a firearm, that is (describe weapon); and
>
> *Three*, the firearm was transported across a state line at some time during or before the defendant's possession of it.

Model Criminal Instruction; 8th Cir., 6.18.922A.

Here, there is no "element" of the type of possession for a conviction for the charge of being a felon in possession of a firearm. The actual instructions used for Jackson's two counts of conviction tracked the Model Instruction form, as shown below. The first instruction is from Count I of Jackson's Indictment:

> It is a crime for a felon to possess a firearm, as charged in Count I of the Indictment. This crime has three elements, which are:
>
> *One*, the defendant had been convicted of a crime punishable by imprisonment for more than one year;
>
> *Two*, after that, the defendant knowingly possessed a firearm, that is a Remington, .22 caliber rifle, bearing serial number A1961432; and
>
> *Three*, the firearm was transported across a state line at some time during or before the defendant's possession of it.

(Jackson's jury instructions, Model Criminal Instructions, 6.18.922)

Count II of the Indictment uses the same language:

It is a crime for a felon to possess a firearm, as charged in Count II of the

Indictment. This crime has three elements, which are:

*One*, the defendant had been convicted of a crime punishable by imprisonment for

more than one year;

*Two*, after that, the defendant knowingly possessed a firearm, that is a Rossi,

multi-caliber rifle, bearing serial number SP543141; and

*Three*, the firearm was transported across a state line at some time during or before

the defendant's possession of it.

(Jackson's jury instructions, Model Criminal Instructions, 6.18.922)

A separate instruction from the Eighth Circuit Model Instructions set out the types

of possession that the jury could consider when deciding their verdict:

> The law recognizes several kinds of possession. A person may have actual possession or constructive possession. A person may have sole or joint possession.

> A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.

> A person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

> If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

> Whenever the word "possession" has been used in these instructions it includes actual as well as constructive possession and also sole as well as joint possession.

(Jackson's jury instructions; Model Criminal Instruction, 8th Cir., 8.02)

Jackson's exact argument was specifically rejected in *United States v. Bryant*, 349 F.3d 1093 (8th Cir. 2003). In that case, the defendant argued that instructing the jury as to actual and constructive possession constructively amended his indictment, charging him with being a felon in possession of a firearm. *Id*. at 1097. In Bryant's case, the district court gave Model Instruction 8.02. That instruction defined the different types of possession that may occur. The same instruction was given in Jackson's case. Bryant, like Jackson, contends that this was error.

In rejecting Bryant's claims, the court explained its reasoning:

On appeal, Mr. Bryant contends that the combination of the instruction and the prosecutor's closing rebuttal argument constructively amended the indictment from alleging sole, actual possession of the firearm to alleging constructive possession of it. A constructive amendment of the indictment effected by instructions to the jury is reversible error *per se*. *United States v. Begnaud*, 783 F.2d 144, 147 n. 4 (8th Cir.1986). Constructive amendments, however, occur only when "instructions in effect allow [ ] the jury to convict the defendant of an offense different from or in addition to the offenses alleged in the indictment." *Id*. at 147. Mr. Bryant's indictment stated simply that he possessed a firearm without any qualification as to whether the possession was actual or constructive. Our review of the record reveals, moreover, that the government did not argue or introduce evidence of constructive possession during the trial. *Even if the government had actually introduced evidence attempting to show that Mr. Bryant constructively possessed a gun, however, that would not have constituted an amendment of the indictment since the indictment did not specify what kind of possession Mr. Bryant was charged with*. Neither the prosecutor nor the district court by its supplemental instruction altered the essential elements of the offense of being a felon in possession of a firearm, which was the charge that appeared in the indictment.

*Bryant*, 349 F.3d at 1097-98. (Emphasis furnished)

In *Bryant*, the appellate court noted that the Government could have introduced evidence of actual and constructive possession in his case without constructively amending the Indictment. (See emphasized section) And that is exactly what happened in

Jackson's case. The Government's evidence proved that Jackson was in actual possession of the firearm described in Count I by holding it and examining it when the firearm was purchased by Jackson. The Government's evidence showed that Jackson constructively possessed the same firearm by leaving it in another person's home with the intent to control its movements. The Government's evidence showed that Jackson was in actual and constructive possession of the firearm described in Count II by Bobbie Jackson's testimony that he had seen Jackson hunting with that firearm and evidence that the firearm was discovered in Jackson's home. In his particular case, the evidence showed Jackson's actual and constructive possession of both firearms. The definition of actual and constructive possession was particularly applicable in Jackson's case and was approved of in *Bryant*.

The Bryant case stands for the proposition that any instruction or argument about the type of possession committed by Jackson was not a constructive amendment of the charge. Again, there was no error committed by this Court.

**Issue # 3 Jackson was denied his constitutional right to testify at a competency hearing.**

In this issue, Jackson claims that he was "denied" his constitutional right to testify at his own competency hearing. In his Brief, Jackson claims, for the first time, that he was suffering from a mental illness that required relief pursuant to Title 18, U.S.C. §§ 4241 through 4248.

This issue arose due to a letter that Jackson filed with the Court on January 13, 2014, one day before his trial. That letter is attached to this Response as Exhibit 1. In that

letter, Jackson complains that he was suffering from severe rheumatoid arthritis and that the federal marshals were withholding all medications from him. Jackson states that he was suffering from excruciating pain since August 6, 2013, the day of his arrest on this charge. Jackson claims that he was subjected to cruel and unusual punishment and that he has notified the marshals, his attorney and jail officials about his condition. Jackson stated that "he can't think due to the pain."

Jackson's only request is that he be transferred to another jail after he is convicted. He asked whether his letter could be entered into the record or if he would need to testify to his condition.

Significantly, Jackson never claimed to be mentally ill, never claimed to be suffering from a mental disease or defect, never requested relief under 18 U.S.C. §§ 4241 through 4248, and appeared to understand the significance of his upcoming trial.

On the day of Jackson's jury trial, this Court took up Jackson's letter as the first order of business. This Court inquired of Jackson's counsel as to Jackson's ability to work with him on the defendant of this case. Jackson's lawyer told the Court that he was able to communicate with Jackson, that Jackson has made similar complaints during the pendency of his case, and that the Federal Defender's investigator had looked into Jackson's health complaints. Jackson's attorney believed that his investigator's report about Jackson's health issues would mirror United States Deputy Marshal Charles Doerge's report.

Jackson's attorney reported that he had met with Jackson on several occasions and that not one of those sessions was interrupted by Jackson's pain. The attorney stated that he was able to work with Jackson. (Trial Tr. pp. 4, 5)

This Court called Deputy Marshal Doerge to the witness stand to testify about Jackson's medical treatment. Doerge testified that he had looked into Jackson's medical issues starting with the date of his arrest. Jackson was incarcerated at the Wayne County jail prior to his arrest on the federal charges. The physician at that jail was giving Jackson Ibuprofen (800 milligrams) and prednisone for treatment of his arthritis. When Jackson arrived at the Cape County jail, he requested hydrocodone, which is a controlled substance. The Cape County jail physician declined to treat Jackson with prednisone, as that medication was a steroid and could eventually cause harm to Jackson. The doctor also refused treatment with hydrocodone. Jackson saw the physician on October 1, 2013, after filling out a medical request form on September 27, 2013. He had seen the jail nurses before October 1. (Trial Tr. pp. 5 – 7)

Jackson did not fill out any further medical request forms with the jail. He did not complain of pain to jail medical personnel. After Jackson filed his letter with the Court, the jail medical staff increased Jackson's Ibuprofen pain medication. Doerge testified that he could find no evidence that any jail official was withholding any medication from Jackson. (Trial Tr. pp. 7 – 10)

After hearing from Doerge, this Court made its finding that Jackson was fully able to assist in his own defense and work with his lawyer. The Court further found that Jackson was not denied any medications and was not suffering from cruel or unusual

punishment. The Court noted that Jackson appeared to be lucid and well and able to assist his counsel. (Trial Tr. pp. 10-11)

This Court had a further opportunity to observe Jackson when he testified. Jackson decided to take the witness stand and testify in his own defense. Jackson testified to a great number of facts in his defense and was on the witness stand for a long time for direct and cross examination. At no time did Jackson appear to be in pain, or be suffering from any medical condition, or appear to be suffering from a mental disease or defect. He testified fully and completely and without the need to stop for medical reasons. (Trial Tr. pp. 110 – 146)

Jackson complains that he was "denied" his right to testify in a competency hearing. However, he never asked for, nor received a competency hearing. Jackson only requested movement to another jail following conviction. He never asked to submit a defense based on his mental health condition. This Court had the opportunity to observe Jackson's demeanor at trial and determine for itself whether he was able to assist his attorney.

Other defendants have contested their mental competency for the first time in a § 2255 proceeding. The defendant in *United States v. Luke*, 686 F.3d 600 (8th Cir 2012) contended that his attorney was ineffective for not obtaining a medical evaluation of his mental health condition. Luke, like Jackson here, contended in his § 2255 filing that he was incompetent at the time of the determination of his guilt. In denying Luke's appeal, the Eighth Circuit noted that the trial court was entitled to rely on its own recollection of

a defendant's demeanor and credibility in determining whether the defendant was competent at the time of the event. *Id.* at 607.

A defendant made a similar complaint in *Sheets v. United States*, 56 F.3d 69 (8th Cir. 1995) (Unpublished). Sheets contended that he had a closed-head injury that made him incompetent to stand trial and that the district court should have discovered his mental health condition. In denying his appeal, the *Sheets* Court noted:

> Retrospective competency determinations are "strongly disfavored." (Citations omitted) Absent some indication to the contrary, the trial court was permitted to presume Sheets was competent to stand trial. (Citation omitted) We conclude the trial court did not err in failing to order a competency hearing sua sponte because the evidence before it did not raise a sufficient doubt as to Sheets's competency to stand trial: the court had before it no prior medical opinion as to Sheets's competency, or evidence of irrational behavior; Sheets indicated that he understood the charges and the disadvantages of representing himself; his demeanor at trial was consistent with that of a competent person; and his behavior was consistent with his theory of the case.

*Sheets*, at *2.

Jackson's situation is nearly identical to that reported of Sheets. There was no medical report before the Court that would question Jackson's competency; Jackson did not behave in an irrational manner; when asked if he desired to testify, Jackson appeared to understand the issues and make an informed decision, unaffected by pain; and Jackson's appearance at trial was consistent with a competent person determined to explain his side of the evidence. There was absolutely no indication that Jackson was suffering from any kind of medical condition that would affect his ability to assist his counsel or defend his case.

Even Jackson's own counsel affirmed that Jackson was able to assist in the trial and that Jackson was not hampered by pain during pretrial preparation. "Trial counsel's opinion [as to competency] should receive a significant weight since counsel, perhaps more than any other party or the court, is in a position to evaluate a defendant's ability to understand the proceedings." *United States v. Denton*, 434 F.3d 1104, 1112 (8th Cir. 2006). In this case, Jackson's own attorney did not believe that Jackson was in so much pain that he was unable to assist him.

Other circuits have discussed what a petitioner must show in order to establish an ineffective assistance of counsel claim due to the counsel's alleged failure to recognize a mental health issue on the part of the defendant. In *Mallett v. United States*, 334 F.3d 491, 497 (6th Cir. 2003), the Sixth Circuit held that in order to succeed on such a claim, the petitioner would have to demonstrate a reasonable probability that the district court would have found him to be incompetent. Just as Mallett failed to establish reasonable grounds to conclude that he was incompetent at trial, Jackson has failed completely. Jackson provides no medical records, no examinations, no expert witnesses and does not even provide current prison medical records dealing with his condition.

The simple truth is that Jackson appeared to be competent, and fully able to assist his attorney at his trial, because he was not hampered by pain and was actually receiving proper medication. It may not have been his choice of medication, but that is not the issue. This Court's original determination that Jackson was able to assist in his defense and was properly medicated should remain as its conclusion now.

Jackson asserts that he should have been entitled to a "diminished capacity" jury instruction, but he fails to set out what that instruction would have called for or what evidence would have supported it. Certainly his subjective, unsupported complaints of arthritic pain would not have been a defense to a felon in possession of a firearm charge. Jackson failed to set out the facts necessary for a review of this claim. Furthermore, the evidence before the Court demonstrates that Jackson was not suffering from a diminished capacity, however he would define that term.

**Issue # 4 Jackson was not convicted of the offense he was charged with.**

In this issue, Jackson re-argues that he was improperly convicted of possessing the firearm that depended on the type of possession. This issue has been fully discussed in the first two issues raised by Jackson. This Court restates its position that the type of possession of the firearm by Jackson, whether actual or constructive, joint or sole, was not an element of the offense that needed to be charged specifically in his Indictment.

**Issue # 5 18 U.S.C. § 922(g)(1) is unconstitutional as applied to Jackson.**

In this issue, Jackson raises seven unrelated issues. This Court will address each separate issue.

First, in the caption, Jackson states that his statute of conviction, § 922(g)(1) is unconstitutional as applied to his case. The United States Constitution is a fairly complex document, with many portions that could deal with Jackson's case. This Court has no way of determining, based on this statement, which section of the Constitution that Jackson is contending affects his case.

In *United States v. Brown*, 436 Fed.Appx. 725 (8th Cir. 2011), the Eighth Circuit held that § 922(g)(1) was not unconstitutional "as applied" to Brown, because Brown did not present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections. *Id*., at * 1. Jackson has failed to make the same distinction and his claim fails for this reason.

This Circuit has held, on numerous occasions, that § 922(g)(1) was a valid exercise of Congress's legislative power. See *United States v. Woolsey*, 759 F.3d 905, 909 (8th Cir. 2014); *United States v. Joos*, 638 F.3d 581, 586 (8th Cir. 2011); *United States v. Barton*, 633 F.3d 168 (3rd Cir. 2011); *United States v. Hill*, 386 F.3d 855, 859 (8th Cir. 2004).

Without specifying some factual or legal basis for concluding that the statute is unconstitutional, this Court finds that Jackson has failed to set forth facts or argument that permits relief on this topic.

Second, Jackson claims that § 922(g)(1) does not differentiate between classes of felonies. In that statement, Jackson is correct. § 922(g)(1) treats anyone as a felon who was sentenced for committing a crime where the defendant could have received a sentence of more than one year in prison. It does not matter whether that felony is a murder case or a Class D felony. The statute treats all felonies alike. But this claim does not set out any reason based on the Constitution that would permit relief to Jackson. Jackson appears to personally disagree with the statute, but provides no basis for a Constitutional argument.

Third, Jackson asserts that the statute does not provide any advance notice of the type of possession to be proved at trial. Again, he is correct, but that statement fails to raise a Constitutional issue. Previously cited cases have demonstrated that the Government is not required to plead the type of possession in the indictment, whether that possession be actual or constructive, sole or joint.

Fourth, Jackson states that § 922(g)(1) is unconstitutionally vague and overbroad. A statute is void for vagueness if it does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *United States v. Michel*, 446 F.3d 1122, 1135 (10th Cir. 2006). A challenge for vagueness will fail if a reasonable person would have known from the language of the statute that his or her conduct was at risk. *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S.Ct. 1853 (1988). One to whose conduct a statute clearly applies may not successfully challenge it for vagueness. *United States v. Platte*, 401 F.3d 1176, 1190 (10th Cir. 2005). Jackson does not state why the statute is vague or overbroad and leaves this Court to guess at the factual or legal reasons that would support Jackson's claim. Every Circuit to consider this question has answered that § 922(g)(1) is not vague or overbroad. See *United States v. Molina*, 484 Fed.Appx. 276, * 5 (10th Cir. 2012); *Paydon v. United States*, 101 F.3d 1393, * 1 (2nd Cir. 1996); *United States v. Rogers*, 41 F.3d 25, 29 (1st Cir. 1994).

Jackson cannot validly claim that he did not know that he was prohibited from possessing a firearm. In his direct examination, he stated that he asked his friend Bob Elledge to hold his firearm "until I could see if I could get my hunting rights back." (Trial

Tr. p. 118) When Jackson was asked by his attorney if he was aware that he couldn't possess firearms, Jackson answered, "Yes." Jackson affirmed that "I knew I couldn't have possession of a firearm after that conviction." (Trial Tr. 117) Jackson can't claim that he was somehow misled by the statute; he knew full well that he was prohibited from possessing firearms. The statute did not somehow become vague between the time that Jackson possessed his firearms and the time of his arrest. This point is without merit.

Fifth, Jackson claims that § 922(g)(1) does not require a jury to be unanimous as to a specific type of possession. In this claim, Jackson is trying to resurrect his previously raised claims arguing that the statue is defective for failing to require that the type of possession be specified. That lack of detail does not render the statute unconstitutional. This Court restates its position that the statute does not require a unanimous jury verdict as to the type of firearms possession.

Sixth, Jackson argues that the statute gave the Government an unfair advantage at trial. Jackson does not set out any factual or legal reason why this is so. Without any basis for his argument, this point should fail for lack of factual allegation to support it.

Jackson raised a seventh sub-issue in his petition that is not included in his Brief. That issue is his claim that § 922(g)(1) inappropriately preempts the Missouri Constitution. Other cases have agreed that § 922(g)(1) does not violate the Tenth Amendment, and is not a violation of state's rights. See *United States v. Myers*, 187 F.3d 644, * 1 (8th Cir. 1999); *United States v. Miller*, 74 F.3d 159 (8th Cir. 1996). This point is without merit.

**Issue # 6 The residual clause of 18 U.S.C. § 924(e) is unconstitutionally vague.**

Jackson, citing *Johnson v. United States*, 135 S.Ct. 2551 (2015), states in his Brief that the residual clause of § 924(e)(2)(B)(ii) is unconstitutionally vague. Jackson is exactly correct in his interpretation of the law, but incorrect in its application.

A felon that is convicted of being a felon in possession of a firearm or ammunition that affected interstate commerce under 18 U.S.C. § 922(g)(1), and who has at least three prior felony convictions for serious drug offenses or violent felonies is classified as an Armed Career Criminal under 18 U.S.C. § 924(e) and is subject to a minimum sentence of fifteen years and a maximum of life imprisonment. Jackson had more than three prior convictions for violent felonies and was classified as an Armed Career Criminal subject to this enhanced punishment.

Jackson's argument concerns the types of prior felony convictions that can be classified as violent felonies for this purpose. Violent felonies are defined by 18 U.S.C. §924(e)(2)(B)(i) and (ii), as follows, in relevant part:

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, . . . , that –
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B) (Emphasis furnished)

Subsection (B)(i) is referred to as the "use of force" clause. Subsection (B)(ii) is referred to as the enumerated crimes section (referring to the listed crimes of burglary, arson, extortion or use of explosives) and the italicized section if (ii) is referred to as the

"residual clause." Jackson is correct in that the holding of *Johnson* made the "residual clause unconstitutional as being too vague to apply. But *Johnson* did not invalidate the classification of felonies as violent felonies when they were "use of force" felonies or enumerated crime felonies. The only question is whether Jackson had three or more violent felonies under the remaining portions of that definition that survive *Johnson*.

Jackson's Presentence Investigation Report discloses that Jackson was convicted of the felonies of Attempted Robbery (PSR ¶ 29), Aggravated Robbery (PSR ¶ 32), Second Degree Burglary (PSR ¶ 36), and Attempted Aggravated Robbery (PSR ¶ 38). All of those crimes involved the use or threatened use of force. All of those crimes are violent felonies under the definition of a violent felony under 18 U.S.C. § 924(e)(2)(B)(i).

In Jackson's case, this Court need not consider the unconstitutional residual clause, or any other felony convictions of Jackson, in order to classify him as an Armed Career Criminal. His classification was valid at the time of sentencing and would be valid if Jackson were re-sentenced today. This issue is more completely discussed in Issue #8. There was no error in Jackson's sentence.

**Issue # 7 The Government improperly commented on Jackson's prior conviction for Aggravated Robbery.**

In this point Jackson contends that the Government committed error by commenting to the jury that Jackson was previously convicted of Aggravated Robbery. Jackson has stated the facts correctly, but once again, fails to apply the law correctly to those facts.

This issue arose because of a factual dispute between the testimony of Bobby Joe Jackson and Jackson. In his rebuttal testimony, Bobby Joe Jackson testified that he was present when A.C. Jackson bought the .22 caliber rifle (Count I), that Bobby Joe saw A.C. Jackson handle the rifle, that he knew that the multi-barreled firearm that was the subject of Count II was bought by A.C. Jackson, that he had seen Jackson hunt with that rifle. (Trial Tr. 150 – 156) When A.C. Jackson testified, he denied that he had handled the .22 caliber firearm and denied having any involvement with the multi-barreled firearm. (Trial Tr. pp. 118, 122 – 124) A factual dispute developed regarding that testimony as to who was truthful.

During closing arguments, the Government argued that Bobby Joe was a more credible witness than Jackson and argued that, when considering the credibility of Jackson, they were allowed to consider the fact that Jackson had been convicted of aggravated robbery in the first degree. The Government limited its use of that conviction in its argument as follows:

> The other credibility determination is between the words of BJ Jackson and A.C.\ Jackson. On one hand you have BJ Jackson, a 15-year veteran who retired as a master sergeant, against the word of A.C. Jackson, a person who's been convicted of aggravated robbery in the first degree. And you're able to use his prior conviction to determine whether or not he's truthful when he was on the witness stand testifying today. That's the purpose of that of you're being informed of that conviction. <u>And, by the way, that's the only purpose</u>.

(Trial Tr. p. 194) (Emphasis furnished)

Jackson's own attorney asked Jackson about his felony conviction for attempted robbery. See Trial Tr. p. 117. Jackson admitted the conviction and that he had served 44

months in prison for that crime. During cross examination, Jackson admitted that the conviction was for Attempted Aggravated Robbery in the First Degree. (Trial Tr. p. 137)

The only issue is whether the Government is allowed to argue that the jury could use a witness's felony conviction to assess their credibility. Federal Rule of Evidence 609(a) specifically allows the use of a prior felony conviction for "attacking a witness's character for truthfulness by evidence of a criminal conviction." That is exactly what happened in this case. The Government used one of Jackson's prior felony convictions to impeach his credibility before the jury.

Jackson knew full well that the jury would be informed of his felony past when he decided to testify. In the colloquy between this Court and Jackson before he testified, this Court warned Jackson as follows:

> Court: Mr. Jackson, I'm going to ask you a few questions. You have the right to testify in this case, take the witness stand and tell your side of the story: You understand that, don't you?

> Jackson: Yes.

> Court: if you do that, though, the Government lawyer will be allowed to cross-examine you, and in addition probably as part of that cross-examination your criminal history will be asked about, and so that information will come in to evidence as well: Do you understand all that?

> Jackson: Yes.

(Trial Tr. p. 108)

The above-cited transcript shows that the Government's only purpose in mentioning Jackson's prior conviction was in arguing that Bobby Joe Jackson was more

credible than A. C. Jackson. That use was within the purposes allowed by Federal Rule of Evidence 609(a).

Jackson cannot claim he was surprised by questions about his criminal history after being warned that the Government could ask those very questions on cross examination. Jackson does not have a legitimate claim that the Government improperly used that testimony in its closing argument, since the Government's only use of that information was pursuant to the rules of evidence. The Government used that criminal history in the only way it could be used; to attack Jackson's credibility. There was no error in the Government's use of Jackson's felony conviction in its argument before the jury.

**Issue # 8 Jackson's sentence is unconstitutionally excessive.**

In this issue, Jackson claims that his sentence was "unconstitutionally excessive." He makes a statement in his Petition and Brief to the effect that he "was not sentenced under 18 United States Code subsection 924(e)." Of course, Jackson was sentenced as an Armed Career Criminal under that very statute. Jackson then claims that this Court improperly used the residual clause of Title 18, U.S.C. § 924(e)(2)(B)(ii) as the basis for finding that he was an Armed Career Criminal. As noted earlier, if a defendant convicted of being a felon in possession of a firearm has three prior felony convictions for violent felonies or serious drug offenses, they are classified as Armed Career Criminals subject to a maximum sentence of life and a minimum sentence of fifteen years. Without that designation, the maximum sentence for a non-Armed Career Criminal is ten years. The nature of a defendant's prior convictions is what separates an Armed Career Criminal

from a defendant who is not so classified. Jackson does not set out exactly what prior conviction of his that was misclassified, but argues generally that he was not an Armed Career Criminal. A brief review of some of Jackson's prior felony convictions demonstrates that he was properly classified as an Armed Career Criminal.

This Court will set out again, in this point, the statutory basis for being classified as an Armed Career Criminal. 18 U.S.C. § 922(g)(1) provides that a person who has been previously convicted of a felony, any felony, is prohibited from possessing a firearm or ammunition that has affected interstate commerce. Any person who does so is subject to a term of imprisonment of up to ten years. 18 U.S.C. § 924(d). However, any defendant convicted in federal court of being a felon in possession of firearms and/or ammunition who has three prior felony convictions for violent felonies must receive an enhanced punishment of a maximum of life and a minimum term of imprisonment of fifteen years. 18 U.S.C. § 924(e) Jackson was sentenced under 18 U.S.C. § 924(e) after this Court determined that he had three prior felony convictions for violent felonies. The definition of a violent felony is relevant in deciding Jackson's eligibility for this enhanced punishment. That definition is set out as follows:

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, . . . , that –
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

18 U.S.C. § 924(e)(2)(B) (Emphasis furnished)

The italicized section set out above was invalidated by the recent holding of *Johnson*, and will not be considered in this argument. That italicized section was formerly known as the residual clause. *Johnson v. United States*, 135 S.Ct. 2551, 2556 (2015). However, the remaining definitions of a violent felony are still viable for determining whether a defendant is an Armed Career Criminal. In deciding whether a prior conviction is a violent felony, this Court should first look at the statute of conviction. *Descamps v. United States*, 133 S.Ct. 2276, 2287 (2013) ("Start with the statutory text and history.") If that statute describes a charge that involves "the use, attempted use, or threatened use of physical force against the person of another, or is burglary, arson, extortion, or involves use of explosives," then the district court should find that the conviction is a violent felony. *Johnson*, 135 S.Ct. at 2563. ("Today's decision (invalidating the residual clause) does not call into question application of the [Armed Career Criminal] Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony.") Contrary to Jackson's contention, a defendant may still be classified as an Armed Career Criminal if they have three prior convictions for serious drug offenses or violent felonies, as that term is defined without the benefit of the residual clause.

The district court should examine the statute of conviction to determine whether it defines, under its own terms, a felony that has as an element the use of force, the attempted use of force, or the threatened use of force, or is a felony of burglary, arson, extortion or involves the use of explosives. If the statute of conviction is contains alternative methods of committing the crime, some which would be violent felonies and

45

some which would not, the district court should consider if the statute is divisible. *Descamps*, 133 S.Ct. at 2281. If the statute sets out one or more of the elements of the offense in the alternative (a divisible statute), then the district court may examine the Shepard-approved documents (charging information, jury instructions, plea colloquy, etc.) in order to determine which subsection of the criminal statute that the defendant violated for his conviction. *Descamps*, 133 S.Ct. at 2281. The district court may not consider the actual facts of the conviction, but must only consider the statute and case documents. *Descamps*, 133 S.Ct. at 2283.

Applying the principles set out in the cases referred to above, Jackson has more than three prior felony convictions that qualify under subsection (i) and the enumerated crimes under subsection (ii). Those convictions are described below.

The first of Jackson's many felony convictions that is a violent felony is his conviction for Attempted Robbery – First Degree – By Means of a Dangerous and Deadly Weapon. That conviction occurred in Missouri in 1969. (PSR ¶ 29) In 1969, Robbery in the First Degree occurred when a defendant forcibly steals property, or attempts to, and, in the course of the crime, either causes serious physical injury, is armed with a deadly weapon,, uses or threatens the immediate use of a dangerous instrument against any person, or displays or threatens the use of what appears to be a deadly weapon or dangerous instrument. All of those subsections describe the use of force against the person of another, so Jackson's conviction under this statute clearly describes a violent felony as a "use of force" definition of that term under 18 U.S.C. §

924(e)(2)(B)(i), because the crime requires the actual, attempted or threatened use of force in committing the crime.

In 1972, Jackson was convicted of the felony of Aggravated Robbery in Kansas. (PSR ¶ 32) The Kansas statute that prohibited such conduct was K.S.A. § 21-3427, which stated:

> Aggravated robbery is a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery.

K.S.A. § 21-3427 (1969).

Again, the statutory text of that conviction describes a violent felony as a "use of force" definition of that term under 18 U.S.C. § 924(e)(2)(B)(i), as it requires either the actual, attempted or threatened use of force in committing the crime.

In 1993, Jackson was convicted of Missouri Second Degree Burglary. (PSR ¶ 36) The Missouri statute that criminalizes such conduct at that time was R.S.Mo. § 569.170. That statute states:

> A person commits the offense of burglary in the second degree when he or she knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein.

R.S.Mo. § 569.170 (1977).

The crime of burglary is an enumerated violent felony under the definition of that term provided in 18 U.S.C. § 924(e)(2)(B)(ii). But not all burglaries are violent felonies. Only burglaries of particular places are classified as violent felonies. The burglary of a building has been a violent felony since the holding of *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143 (1990). In *Taylor*, the Supreme Court stated that:

47

> We conclude that a person has been convicted of a burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.

*Taylor*, 495 U.S. at 599.

Jackson's statute of conviction, Missouri R.S.Mo. ¶ 569.170, only allows a conviction for a defendant entering either a building or inhabitable structure with the intent to commit a crime. This Court may consider the Missouri statute to be divisible because it allows a conviction for burglarizing either a building or inhabitable structure. But applying the rules regarding divisibility, this Court would then look at the charging information to determine which of those two methods of committing the crime that Jackson utilized. In this case, Jackson's charging Information discloses that he was convicted of entering a *building* with the intent to steal. Therefore, Jackson's Missouri felony of Second Degree Burglary is a violent felony since it is the burglary of a building.

In 2007, Jackson was convicted of the Minnesota felony of Attempted Aggravated Robbery in the First Degree. That statute, M.S.A. § 609.245, Subdivision 1, states:

> First Degree. Whoever, while committing a robbery, is armed with a dangerous weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon, or inflicts bodily harm upon another, is guilty of aggravated robbery in the first degree . . .

M.S.A. § 609.245 (1994).

Once again, that statute describes crimes committed with a use of force, attempted use of force or threatened use of force. Jackson's conviction for this charge is a violent felony under 18 U.S.C. § 924(e)(2)(B)(i). Jackson also has a conviction for Armed Violence and Unlawful Use of a Weapon.

Jackson has a total of four convictions for violent felonies. He only needs three in order to be classified as an Armed Career Criminal subject to the enhanced penalty provisions of 18 U.S.C. § 924(e). Jackson was properly sentenced by this Court and there was no error in imposing that sentence. Jackson was charged in his Indictment as an Armed Career Criminal. He knew full well, since the date of his arrest, of what his potential penalty was for being convicted of his crimes. Jackson's complaint that his sentence was unconstitutionally excessive is without merit.

**Issue # 9 The District Court improperly permitted a jury to sleep during the trial.**

In this issue, Jackson contends that one of his jurors fell asleep during his trial. Jackson then argues that he was denied his right to a fair trial. The record discloses that Jackson's attorneys made, then withdrew a motion concerning that juror. (Trial Tr. pp. 221-222) There is no evidence that the juror was sleeping, nor is there any evidence that Jackson was prejudiced by that allegation. He merely assumes that he was prejudiced. This Court was not aware that any juror was sleeping during the presentation of evidence or argument. Jackson has made an argument that is not based on facts in the record and does not argue that he was prejudiced by the event. His claim fails for a lack of proof of the very fact that a juror was sleeping and by his failure to allege how he was prejudiced.

In any event, the appellate standard for Jackson to complain about a non-attentive juror is for Jackson to prove that this Court abused its discretion in not removing a juror. *United States v. Wilcox*, 50 F.3d 600, 603 (8th Cir. 1995). In *Wilcox*, the defendant claimed that the district court erred in not removing a juror who slept during the reading of the jury instructions. This Court determined that the juror had heard all the evidence

and was capable of deliberating and reaching a fair verdict. *Id*. Just showing that a juror

might have been sleeping, or nodding off at times, especially during closing arguments,

does not result in the juror being removed. This Court retains broad discretion in

determining whether to dismiss a juror accused of sleeping. *United States v. Green*, 428

F.3d 1131, 1135 (8th Cir. 2005). This Court, in Jackson's case, exercised its discretion

properly and did not remove the juror on the basis on defense counsel's unsupported

allegation.

Jackson's complaint fails due to his lack of proof and lack of showing of prejudice

to him.

## Issue # 10 The District Court improperly allowed the grand jury access to a copy of the indictment.

In his final issue, Jackson states that this Court erred by allowing the jury a copy

of Jackson's Indictment. Jackson states that the Indictment contained the name and nature

of his prior Attempted Aggravated Robbery in the First Degree. He implies that this error

was harmful to his defense.

Of course, Jackson is factually incorrect in this assertion; a copy of the Indictment

was never given to the jury. Jackson cites Trial Transcript pages 185 and 192 as support

for his allegation. However, a closer reading of those pages demonstrates Jackson's

fundamental factual errors.

At Trial Transcript pages 184 and 185, the parties were having their jury

instruction conference on the record. The Government had tendered its instructions and

the parties were going over which instructions were acceptable. In its packet of closing

instructions, the Government had tendered a copy of the Indictment that had the allegations as to the nature of Jackson's prior convictions omitted. At one point, the record reflected the following:

> Court: . . . So Instruction No. 7 will be the statutory citation instruction, Title 18, Section 922(g)(1). Any objection?
>
> Sorrell: No, Your Honor.
>
> Tilsen: No.
>
> Court: I don't think that there's a need to submit an instruction that repeats the allegations from the indictment since I already read that instruction to them at the beginning –
>
> Sorrell: Yes.
>
> Court: -- unless one of the two of you wants to specifically request it.
>
> Sorrell: No.
>
> Tilsen: Are you reading the indictment? They're getting a written copy of these?
>
> Court: Sure.
>
> Tilsen: I don't have any objection.
>
> Court: So Instruction No. 8 will be based on O'Malley Section 13.05, the in and around or on or about a certain date instruction. Any objection?
>
> Sorrell: No, Your Honor.
>
> Tilsen: No.

Trial Tr. pp. 184, 185.

It is clear from this transcript that the Government tendered the Indictment as an Instruction, *and this Court refused it*. That instruction containing the allegations of the Indictment was never read to the jury. The Government proposed it; this Court rejected it.

51

The Government has attached to this Response copies of the jury instructions actually read to the jury as Exhibit 3. The Indictment was not a part of those instructions nor furnished to the jury.

The only time that the Indictment was referred to in the jury instructions was at the beginning of the case, when this Court read a portion of the Indictment to the jury so that they would know what charges that Jackson faced. That portion of the Indictment read to the jury stated as follows:

### COUNT I

At a time unknown to the Grand Jury, but including a period from in and around March 28, 2012, to March 28, 2013, in Wayne County, Missouri, within the Eastern District of Missouri, the defendant, **A. C. JACKSON**, did knowingly possess in and affecting commerce, a firearm, to wit: a Remington, Model 552, Speedmaster, .22 caliber rifle, bearing serial number A1961432; and had previously thereto been convicted of [a] crime punishable by a term of imprisonment exceeding one year.

### COUNT II

On or about March 29, 2013, in Wayne County, Missouri, within the Eastern District of Missouri, the defendant, **A. C. JACKSON**, did knowingly possess in and affecting commerce, a firearm, to wit: a Rossi, model Trifecta, multi-caliber, break-action rifle, bearing serial number SP543141; and had previously thereto been convicted of [a] crime punishable by a term of imprisonment exceeding one year.

There was no reference to the nature of Jackson's prior conviction in the jury instructions. It is true that one of Jackson's prior convictions was introduced into evidence, once by his attorney and once on cross examination. But that introduction was proper for impeachment of Jackson, which is allowed by the Federal Rules of Evidence.

Jackson also cites Trial Transcript page 192 for evidentiary support for his allegation that his Indictment was improperly presented to the jury. That transcript page

is only the Government attorney reading the elements of the offense from one of the jury instructions, Number 9. It was certainly not a reading of the Indictment. Jackson's prior felony convictions were never disclosed in any jury instruction. The actual Indictment in this case was never given to the jury.

Jackson is factually mistaken as to whether his formal Indictment was given to the jury. It was not. There was no error regarding this issue.

## CONCLUSION

For the foregoing reasons, this Court denies Jackson's § 2255 petition, without a hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Jackson has not made a substantial showing of the denial of a federal constitutional right.

Dated this 5th day of November, 2015.


_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE